MoKiotby, J.,
delivered the opinion of the Court.
This- was an action of assumpsit upon a promissory note for $1250,00, made by the firm of W. E. Newell & Co., payable to Jordan Eldridge & Co., at four months, and indorsed in blank by the payees, and also by W. T. Dortch. The makers and indorsers were jointly sued, and a recovery had against them; but only the indorsers have appealed.
It appears that R. H. Frasier, of New Orleans, accepted two bills of exchange, of five thousand dollars each, for the accommodation of W. E. Newell & Co., of Clarksville, Tenn., the first of which fell due on the 11th of November, 1856, and the other on the 14th of December following. There being no funds in the hands of the acceptor to meet the bill first due, J. H. Pritchett, one of the firm of Newell & Co., addressed a letter to Erasier, the acceptor, sometime after the 1st of Novena- *246 her, 1856, enclosing the note sued on, and another promissory note for $4,000.00, and stated therein, “that he was not able to send the money to pay the bill; but he (Frasier) could relieve himself by raising money on the notes which were enclosed.” It seems that no directions were given, nor were any restrictions imposed as regards the mode in which the notes were to be used or disposed of by Frasier; the foregoing statement in Pritchett’s letter being all that was said upon the subject.
It seems that the notes did not reach Frasier until the 15th of November, and after he had paid the bill. On their reception, Frasier wrote to Pritchett, stating that the notes were worthless to him, for the purpose of raising money on them, as “country paper” would not command money in the market, and urging a remittance of the money, but retaining the notes. In a few days afterwards, to-wit, on the 18th of November, 1856, the firm of W. E. Newell & Co., failed, and made an assignment of their effects for the benefit of creditors.
Sometime after Frasier received said notes, the date is not shown in the record, he disposed of the note sued on for his own individual benefit, by transferring it, by delivery, to the plaintiff, A. J. Frasier.
The question submitted for our determination is, whether, as between Frasier and the indorsers, the former acquired such an interest in the note as entitled him to appropriate it to his own use, or to maintain an action thereon.
It is certainly well settled, that where a bill or note has been delivered to a person as agent, or for a *247 special purpose, he and all other persons talcing the same with a knowledge of the facts, must apply it accordingly. As where a bill or note has been received by the plaintiff to be discounted, he cannot apply it to his own use in satisfaction of a debt; and if he pays it away in discharge of a debt of his own, he will be liable to the party from whom he received it, in the same manner as if he had discounted the bill, and cannot avail himself of a set-off. Chitty on Bills, (Ed. of 1854,) 72, 198, marg.
But this principle, we think, has no application to the case before us. The notes were delivered to Erasier, generally, in the place of money, with an unlimited discretion to make any such disposition of them as might be thought proper, to enable him to meet the payment of the bill soon falling due. The object of the delivery was to “relieve” Erasier. And if Erasier might have made a valid disposition of the notes, before the maturity of the bill, to raise money to meet its payment; surely, he might, after being compelled to pay the bill, make an equally valid disposition of the notes in order to reimburse himself the amount paid out of his own funds. It is expressly laid down in Chitty on Bills, page 239, that if a bill be transmitted to a person to get discounted, and take up another bill to which he was a party, and he do not succeed in getting such bill discounted, but pays the other, he may retain the transmitted bill and sue the parties thereto, in order to reimburse himself the amount of the bill which he took up.
The statement of Erasier, that the notes were not available for the purpose of raising money in the mar *248 ket, cannot fairly be regarded as equivalent to a refusal to accept or retain the notes for his own benefit. But even if this were so, he was at liberty to change his determination; as it is manifest that the notes were sent with the intention that the proceeds should be applied for his indemnity. The failure of Newell & Co., in the aspect in which the case is presented, can have no influence upon the determination.
Judgment affirmed.